# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                        )
JASON MOUNT,               )
                        )
          Plaintiff,     )
                        )
         v.            )     Civil Action No. 12-CV-1276(KBJ)
                        )
JEH JOHNSON,           )
Secretary, Department of     )
Homeland Security,[1]      )
                        )
         Defendant.    )
                        )
_____ )

## MEMORANDUM OPINION

This employment discrimination case turns on a question of law regarding whether alleged acts of retaliation that occur subsequent to the plaintiff's filing of an administrative Equal Employment Opportunity ("EEO") charge need to be exhausted separately. Plaintiff Jason Mount ("Plaintiff" or "Mount") filed the instant complaint on August 27, 2013, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, alleging that his employer, the Department of Homeland Security ("DHS" or "Defendant"), wrongfully refused to select him for 43 different positions that he applied for within the agency. (*See* Complaint, ECF No. 1.) Mount maintains that this extensive series of non-selections was motivated by discriminatory and retaliatory animus; specifically, Mount alleges that he was not promoted to any of the posts due to discrimination based on his gender and race (*id.* ¶¶ 123-143 (Counts I and II)), and that agency officials also refused to select him because he had previously filed an EEO

---
[1] Mount filed this action against Janet A. Napolitano in her capacity as Secretary of the Department of Homeland Security. Jeh Johnson is substituted as defendant pursuant to Fed. R. Civ. P. 25(d).

charge claiming gender and race discrimination on the basis of his supervisor's treatment of him (*id.* ¶¶ 144-151 (Count III)).

Before this Court at present is Defendant's motion to dismiss the complaint in part, or in the alternative, motion for partial summary judgment. (Def.'s Partial Mot. to Dismiss or in the Alternative for Partial Summ. J., ("Def.'s Mot."), ECF No. 7.) Offering additional documentation regarding the scope of Mount's EEO charge, Defendant argues that only one of the 43 alleged non-selection events listed in Mount's complaint was raised in the context of Mount's EEO complaint; therefore, the rest of the alleged instances of discrimination/retaliation must be dismissed from the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies. (*Id.* at 1.)[2] Because this Court agrees with Defendant that the applicable legal standards regarding administrative exhaustion were not satisfied under the circumstances presented here, the Court concludes that there is no genuine issue of material fact regarding Mount's failure to satisfy Title VII's exhaustion requirement with respect to all but one of his non-selection retaliation allegations. Therefore, Defendant's motion to dismiss the complaint in part, or in the alternative, motion for partial summary judgment, is **GRANTED**. As explained below, Counts I and II of the complaint are dismissed in their entirety, and the only surviving non-selection event for the purpose of Count III is Mount's contention that the agency retaliated against him in the spring of 2011, when officials did not select him for a posted agency position in Los Angeles. A separate order consistent with this opinion will follow.

---

[2] Page numbers throughout this opinion refer to the page numbers generated by the Court's electronic filing system.

# I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

For the purpose of the pending motion, the essential facts of this matter are not in dispute.  (*See* Def.'s Reply, ECF No. 9, at 7.)  Mount was hired in 2001 to serve as an employee of the U.S. Customs Service, which is the predecessor agency to U.S. Immigration and Customs Enforcement ("ICE"), a division of the U.S. Department of Homeland Security's Investigations ("HSI") unit.  (Compl. ¶¶ 1, 13.)[3]  By 2009, Mount had been promoted to the position of Branch Chief/Supervisor Special Agent at ICE headquarters in Washington, DC.  (*Id.* ¶ 14.)

In November of 2010, Mount filed an administrative EEO complaint alleging gender discrimination because his then-supervisor, Sharon Peyus, had decided to have Mount work from a cubicle instead of an office, while giving offices to his female coworkers.  (*Id.* ¶¶ 15, 22; Ex. 6 to Def.'s Mot., Report of Investigation ("ROI"), ECF No. 7-6, at 7, 22-24, 27-31.)  Mount contends that, as a result of this EEO charge, Peyus and other agency officials embarked on a series of retaliatory actions (mostly in the form of non-selections) beginning in January of 2011, and continuing until April of 2012.  Notably, as explained below, only some of these alleged retaliatory actions were raised within the context of Mount's EEO complaint.

First, in March of 2011, four months after the filing of his discrimination complaint, Mount notified the agency that he believed Peyus had taken certain actions

---

[3]  When Mount was first hired, the agency was known as the "United States Customs Service."  (Compl. ¶ 13.)  In 2003, the agency's name was changed to United States Immigration and Customs Enforcement ("ICE"), which is part of the Department of Homeland Security.  *See Contreras v. Ridge*, 305 F. Supp. 2d 126, 128 n.1 (D.D.C. 2004).  The Homeland Security Investigations ("HSI") unit is a subdivision of ICE; as its name suggests, HSI is responsible for investigating "illegal movement of people and goods into, within and out of the United States."  *See* http://www.ice.gov/about/offices/ homeland-security-investigations/ (last visited Apr. 9, 2014).  HSI maintains offices all over the country and abroad.  *Id.*

in response to his having brought administrative charges, and he wanted this alleged retaliation to be included in his EEO complaint. (ROI at 7.) Specifically, Mount maintained that (1) the parties' failure to settle the initial claims at mediation constituted retaliation, and (2) Peyus had withheld training opportunities when she cancelled Mount's attendance at a leadership training program and did not permit him to apply to an ICE fellowship program, and he requested a formal amendment to the original EEO complaint to include these two new allegations. (*Id.*) Shortly after that amendment and also in March of 2011, Mount filed a second EEO complaint, this time alleging that he was discriminated against on the basis of his race when he was not selected for an Assistant Special Agent-in-Charge ("ASAC") position in Las Vegas, Nevada. (ROI at 13 ("I believe I was not considered for the [Las Vegas] position based on my race."); Ex. 7 to Def.'s Mot., Report of Investigation ("Second ROI"), ECF No. 7-7, at 13-14.) Mount had apparently applied to the Las Vegas ASAC position on October 15, 2010, and had learned that he was not selected for the position on December 30, 2010. (Second ROI at 3; Ex. 3 to Def.'s Mot., Decl. of Dinisha Brown ("Brown Decl."), ECF No. 7-3, at 2.) Claude Arnold, who was the Special Agent-in-Charge of the Los Angeles HSI office, made the selection for that Las Vegas ASAC position, which a three-member evaluation panel and HSI's National Director for Operations approved. (ROI at 54-57; Arnold Aff. ¶¶ 5, 13, 17-35, 28-31.) Mount, who is Caucasian (Compl. ¶ 135), asserted in his second EEO complaint that the agency had chosen an African-American man for the position instead of him solely because of race. (ROI at 12-13.)

Mount then asked the agency to consolidate his two separate administrative complaints. (*See* Second ROI at 13-14.) By letter of April 7, 2011, the agency notified Mount that it had consolidated the complaints such that, with the exception of his allegations regarding the purportedly retaliatory failure to settle at mediation, the consolidated administrative complaint addressed all of Mount's claims up to that point in time (*i.e.*, his claims that Peyus had discrimination against him on the basis of gender and had retaliated against him for bringing that EEO charge, and that Arnold had discriminated against him on the basis of race when he failed to select him for the Las Vegas ASAC position). (*Id.* at 14; ROI at 22-24.) An EEO contractor was assigned to investigate the claims in the consolidated complaint, and that investigator contacted Mount on May 27, 2011. (Second ROI at 17-18.) An investigation of Mount's consolidated EEO complaint took place from May 31, 2011, through August 10, 2011. (ROI at 4.)

On August 29, 2011, after the investigation of the claims in Mount's consolidated complaint had ended, Mount requested an amendment to his consolidated EEO complaint. (Second ROI at 13-14.) Mount had applied for a Special Agent-in-Charge position in HSI's office in Los Angeles, California on March 21, 2011, and had learned that he had not been selected on July 14, 2011. (*Id.*; Brown Decl. at 2.)[4] The same person who had not selected Mount for the Las Vegas position (Claude Arnold) also made the selection determination regarding the Los Angeles post. (Second ROI at 19-20.) Mount maintained that the only reason Arnold did not select him for the Los

---

[4] In the complaint, Mount alleged that he was not selected for the Los Angeles position in February 2011 (Compl. ¶ 23), but it is clear from the record that this non-selection occurred on July 14, 2011. (*See* Brown Decl. at 2; Ex. 5 to Def.'s Mot., Decl. of Janet White ("White Decl."), ECF No. 7-5, ¶¶ 5-8.)

Angeles position was the fact that Mount had previously filed an administrative complaint against Arnold; therefore, Mount requested that his consolidated EEO complaint be amended in order to include an additional charge of retaliation based on the Los Angeles non-selection. By letter dated November 14, 2011, the agency granted his request. (Second ROI at 13-14.) Notably, the agency's grant letter specifically addressed the agency's policy regarding such amendments:

> While a complaint is pending, a Complainant may raise a new incident of alleged discrimination that is not a part of the existing claim but may be like or related to the pending claim. If the new claim is like or related to claim(s) raised in the pending complaint, the pending complaint may be amended to include the newly-raised allegation and there is no requirement to seek counseling on the new claim. EEOC Management Directive 110, Chapter 5; III B. Your client's complaint is hereby amended to include this issue.

(*Id.* at 14.)

Having amended Mount's EEO complaint to include a retaliation allegation stemming from the denial of the Los Angeles ASAC position, the agency then appointed a new EEO investigator to inquire into this new charge. (Second ROI at 1.) The new investigation commenced on May 17, 2012, and the record establishes that the investigator contacted Mount's attorney to seek information regarding the entirety of the newly-amended administrative complaint—not just the added Los Angeles ASAC non-selection event. (*Id.* at 1, 15-16.) Mount's lawyer rebuffed the investigator's expansive inquiry, explaining that most of "the issues have already been covered by the original [investigation,]" so "[t]he *only issue you should be investigating is the LA job*[.]" (*Id.* at 16 (emphasis added)); *see also id.* at 15 (in an email to the investigator, Mount's attorney reiterates that "the only relevant issue that was not investigated in the already completed [Report of Investigation]" is the Los Angeles position, so it is "the

6

only issue that you have a right to compel cooperation from Mr. Mount and it is the only issue we've addressed").)  In addition, consistent with Mount's attorney's statements, the declaration that Mount submitted in response to the investigator's inquiries provided information about the Los Angeles position only.  (*Id.* at 19-20.) The EEO investigation into Mount's additional charge of retaliation as a result of his non-selection for the Los Angeles ASAC position concluded on July 19, 2012.  (*Id.* at 1.)

Mount filed the instant lawsuit on July 21, 2012.  According to the complaint, from January 19, 2011, to April 25, 2012—a period of time that spans the agency's months of investigation regarding the charges in the consolidated and amended administrative complaint—Mount applied for and was not selected for more than 40 other vacancies within the agency in a wide variety of geographic locations.  (*See* Compl. ¶¶ 24-117.) [5]  The complaint states that Mount "initiated this request because he has not received fair consideration as a result of retaliation for his EEO activities and discrimination for any of the *forty-three* lateral [ ] positions he has applied for since October 15, 2010" (*Id.* ¶ 121 (emphasis in original)), and it claims that the listed series of non-selections constituted gender (Count I) and race (Count II) discrimination, and also retaliation (Count III) in violation of Title VII.  (*Id.* ¶¶ 123-151.)

Significantly, Mount's initial EEO charges (*i.e.*, Peyus's alleged discriminatory refusal to give him an office and her alleged retaliatory denial of his requests for

---

[5] For example, Mount applied to and was not selected for the following positions:  Assistant Special Agent-in-Charge of various HSI offices (Compl. ¶¶ 24 (Miami, Florida), 95 (Long Beach, California)); Deputy Special Agent-in-Charge positions in HSI offices around the country (*see, e.g.*, *id.* ¶¶ 89 (Tampa, Florida), 101 (Miami, Florida)); Resident Agent-in-Charge of HSI's Providence, Rhode Island office (*id.* ¶ 39); Deputy Assistant Director of HSI's Washington, D.C.-based Office of Intelligence (*id.* ¶ 33); Unit Chief in HSI's Washington, D.C. office (*id.* ¶ 25); and ICE attaché positions abroad (*id.* ¶¶ 42, 52).

training) do not appear in the instant complaint, nor does the complaint specifically reference the Las Vegas non-selection incident. Instead, the complaint opens with the general assertion that Mount "was involved in protected EEO activity on November 30, 2010[,]" and it then marches through a series of subsequent opportunities for vacant positions, beginning in early January of 2011, that Mount purportedly applied for but allegedly was denied due to discriminatory and retaliatory animus. (*See*, *e.g.*, *id.* ¶¶ 16-118.)

For the great majority of the non-selection allegations, the complaint alleges generally that "HSI management" repeatedly "passed [him] over" for positions "in retaliation for his EEO activity." (*See, e.g.*, *id.* ¶¶ 23, 24, 27, 29, 31, 40, 43, 46, 50, 53, 56, 58, 59, 64, 69, 71, 73, 75, 79, 81, 87, 90, 92, 94, 96, 98, 100, 102, 104, 106, 108, 110, 112, 114, 116, 118.) For just a handful of the claims, Mount provides more information. For example, Mount alleges that he applied to a Deputy Assistant Director position in the Washington, D.C.-based HSI Office of Intelligence in June 2011, and that HSI Assistant Director James Chaparro informed him that he had not chosen Mount for the position. (*Id.* ¶¶ 33-34.) The complaint's allegations regarding the vast majority of the non-selection events do not include any information about the selecting officer. Moreover, there is no dispute that the only non-selection event in the instant complaint that Mount also specifically raised with the EEO was the July 14, 2011, non-selection for the Los Angeles ASAC position, and as noted, Mount's specific EEO charge was that the Los Angeles non-selection incident had occurred in retaliation for prior EEO activity.

On March 4, 2013, Defendant filed the present motion to dismiss the complaint in part, or in the alternative, motion for partial summary judgment, arguing that the only non-selection event in the complaint that was adequately exhausted was Mount's allegation that he was "passed over for an ASAC position in Los Angeles" in February of 2011 (Compl. ¶ 23), and that, consequently, Mount's remaining non-selection allegations should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Def.'s Mot. at 1.) This Court heard oral argument on Defendant's motion on August 27, 2013.

## II. LEGAL STANDARD

### A. Motion To Dismiss Under Rule 12(b)(6) For Failure To Exhaust Administrative Remedies

"Before filing suit, a federal employee who believes that her agency has discriminated against her in violation of Title VII must first seek administrative adjudication of her claim." *Payne v. Salazar*, 619 F.3d 56, 58 (D.C. Cir. 2010) (citation omitted), *rev'd on other grounds by* 619 F.3d 56 (D.C. Cir. 2010); *see* 42 U.S.C. §1000e-16(c). The exhaustion requirements under Title VII, which are explained *infra* in Part III.A, are mandatory but not jurisdictional. *See Douglas v. Donovan*, 559 F.3d 549, 556 n.4 (D.C. Cir. 2009). Instead, these exhaustion requirements are akin to a statute of limitations, and failure to exhaust is raised as an affirmative defense. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Koch v. Walter*, 935 F. Supp. 2d 164, 170 (D.D.C. 2013). Accordingly, the defendant "bears the burden of proving by a preponderance of the evidence that the plaintiff has failed to exhaust his administrative remedies." *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 276 (D.D.C. 2011) (citing *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)). Moreover,

motions to dismiss Title VII claims for failure to exhaust administrative remedies are analyzed under Federal Rule of Civil Procedure 12(b)(6).  *See Porter v. Sebelius*, 944 F. Supp. 2d 65, 68 (D.D.C. 2013) (citing *Rosier v. Holder*, 833 F. Supp. 2d 1, 5 (D.D.C. 2011)); *see, e.g.*, *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 178-79 (D.D.C. 2012); *Noisette v. Geithner*, 693 F. Supp. 2d 60, 65 (D.D.C. 2010) (citation omitted).

 "A Rule 12(b)(6) motion tests the legal sufficiency of a complaint[.]"  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In deciding whether to dismiss a complaint for failure to state a claim, the court "must treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor." *Epps v. U.S. Capitol Police Bd.*, 719 F. Supp. 2d 7, 13 (D.D.C. 2010) (citing *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003)).  Moreover, when deciding a Rule 12(b)(6) motion, a court generally does not consider matters beyond the pleadings.  *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119-20 (D.D.C. 2011).  This means that the court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[.]"  *Id.* at 119 (internal quotation marks and citations omitted); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (same).  However, if the

court considers documents outside this narrow orbit—*i.e.*, if it considers documents *other than* those attached to or specifically referenced in the complaint or those upon which the complaint necessarily relies—the court must convert the motion from one that is made under Rule 12(b)(6) to a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

## B. Conversion To Summary Judgment

In this case, the complaint does not contain any attachments; however, both parties have attached a number of documents to their briefs regarding the instant motion to dismiss. Defendant has submitted the following: (1) a statement of material facts not in genuine dispute (ECF No. 7-1); (2) the agency's Report of Investigation ("ROI") regarding Mount's initial EEO case, which includes Mount's first administrative complaint and documents the agency prepared during their investigation (ECF No. 7-6); and (3) the contractor's ROI of Mount's consolidated administrative complaint , including Moutn's second EEO complaint (ECF No. 7-7). Defendant has also submitted declarations of ICE employees Claude Arnold (ECF No. 7-2), Dinisha Brown (ECF No. 7-3), Katherine Pull (ECF No. 7-4), and Janet White (ECF No. 7-5). For his part, Mount has submitted the following additional documents in conjunction with his opposition to Defendant's motion: (1) a statement of genuine issues (ECF No. 8-1); (2) a Rule 56(d) affidavit of Plaintiff's counsel, in which counsel states that discovery is needed to identify the individuals involved in the selections (ECF No. 8-3); and (3)

excerpts from the same ROIs that are attached to Defendant's motion (ECF Nos. 8-4, 8-5).

Because Mount's complaint does not discuss or describe his EEO charge in any respect, the ROIs from the agency and related documents that the parties have submitted are not materials upon which the complaint "necessarily relies," nor does the complaint quote or refer to those materials. The Court's consideration of these additional materials thus implicates the conversion rule, and indeed, Mount appears to agree with Defendant that conversion to summary judgment is appropriate. (*See* Pl.'s Mem. in Opp'n to Def.'s Partial Mot. to Dismiss or in the Alternative Mot. for Partial Summ. J. (Pl.'s Opp'n"), ECF No. 8, at 9 ("Defendant's motion cannot be decided on a Rule 12(b)(6) motion[.] . . . [T]his case must be decided under the Rule 56 standard." (citation omitted)).) At the same time, Mount contends in his Rule 56(d) affidavit that summary judgment is premature at this stage of the litigation, because he wishes to take discovery regarding certain non-selections in order to determine who made the challenged hiring determinations. (Pl.'s Opp'n at 20; Rule 56(d) Aff. of Morris E. Fischer, ECF No. 8-3.) Defendant maintains that no further discovery is needed because the bulk of the case must either be dismissed, or summary judgment must be entered in its favor, due to the exhaustion deficiency. (Def.'s Reply at 11-12.)

Exercising the considerable discretion that district courts are afforded when deciding whether or not to convert a motion to dismiss into a motion for summary judgment, *see Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006) (citation omitted); *see also Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 493 (D.C. Cir. 1996) (Silberman, J., concurring in part and dissenting in part), this Court

concludes that conversion is appropriate here and will treat Defendant's motion as a motion for summary judgment under Rule 56 with respect to the exhaustion issue only. *See, e.g.*, *Pintro v. Wheeler*, No. 13-0231, 2014 WL 1315976, at *4 (D.D.C. Apr. 2, 2014) (converting defendant's 12(b)(6) motion to dismiss to a motion for summary judgment with respect to the plaintiff's failure to exhaust administrative remedies). This Court concludes that such treatment is "fair to both parties[,]" *Tele-Commc'ns of Key West, Inc. v. United States*, 757 F.2d 1330, 1334 (D.C. Cir. 1985), because both parties here have had an opportunity to address the conversion question, and also because the Court's consideration of summary judgment at this juncture relates only to the documents and materials that have been submitted to address exhaustion and will not preclude further discovery on the merits of any surviving claims. Moreover, the submitted materials, and in particular, the ROIs, are the only record evidence that establishes the particular charges Mount brought in the EEO context, which means, as a practical matter, that the only way to assess adequately Defendant's exhaustion arguments is to consider them. *Cf. Ryan-White v. Blank*, 922 F. Supp. 2d 19, 22-23 (D.D.C. 2013) (noting that "[i]f extra-pleading evidence is comprehensive and will enable a rational determination of a summary judgment motion, a district court will be more likely to convert to summary judgment" (internal quotation marks and citation omitted)). Consequently, this Court will not exclude the agency ROIs and the additional materials the parties have submitted insofar as they relate to the exhaustion issue; hence, Defendant's motion will be treated as one for summary judgment under Rule 56 rather than as a 12(b)(6) motion to dismiss.

## C. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [thus] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

When Rule 56 is invoked, the moving party has the initial burden of demonstrating the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, to defeat the motion, the non-moving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted). While the Court must view this evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, *see, e.g.*, *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23 (D.C. Cir. 2013), the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position—"there must be evidence on which the jury could reasonably find for [the non-moving party]." *Anderson*, 477 U.S. at 252. Moreover, the non-moving party "may not rest upon mere allegation or denials of his pleading but must present affirmative evidence showing a genuine issue for trial." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal quotation marks and citation omitted).

The Court further notes that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment." *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (citation omitted). Rather, the Court's role in deciding a summary judgment motion is not to "determine the truth of the matter, but instead decide only whether there is a genuine issue for trial." *Id.* (citation omitted).

## III. DISCUSSION

### A. Title VII Exhaustion Requirements

Defendant argues that it is entitled to entry of judgment in its favor with respect to all of the alleged discriminatory and retaliatory non-selections in Mount's complaint, except for the non-selection for the Los Angeles ASAC position, because Mount failed to exhaust administrative remedies with respect to all of the other alleged non-selection events. (Def.'s Mot. at 1.) Title VII's administrative exhaustion requirement is clearly established: an employee must contact an EEO counselor to initiate informal counseling within 45 days of learning of the allegedly discriminatory event or adverse personnel action. 29 C.F.R. § 1614.105; *see also Woodruff v. Peters*, 482 F.3d 521, 527 (D.C. Cir. 2007); *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). Thereafter, the employee must file a formal administrative complaint within 180 days of the event. 19 C.F.R. § 1614.106(a)-(c); *see also Hamilton v. Geithner*, 666 F.3d 1244, 1250-51 (D.C. Cir. 2012).[6] The employee may amend the administrative complaint at any time prior to the conclusion of the agency's investigation, 29 C.F.R. § 1614.106(d); however, after receiving notice of the agency's final action, the employee must file his or her

---

[6] Although not at issue here, the time period is extended to 300 days if a parallel state agency was investigating the claim along with the EEO office. *See* 19 C.F.R. § 1614.106(a)-(c).

civil action in federal court within 90 days. *Id.* § 1614.407; 42 U.S.C. § 42-2000e-15(c); *see also Colbert v. Potter*, 471 F.3d 158, 160 (D.C. Cir. 2006).

"These procedural requirements governing [a] plaintiff's right to bring a Title VII claim in federal court are not trivial." *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 68 (D.D.C. 2007). Rather, administrative exhaustion is meant to give the "agency notice of a claim and [the] opportunity to handle it internally," *Guerrero v. Univ. of District of Columbia*, 251 F. Supp. 2d 13, 21 (D.D.C. 2003) (alteration in original), which preserves the court's time and resources, *Hamilton*, 666 F.3d at 1350-51.

In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court addressed the administrative exhaustion requirement as it relates to multiple allegations of discrimination. 536 U.S. 101, 114-15 (2002). Prior to *Morgan*, an administrative complaint was construed to encompass all incidents that are "'like or reasonably related to' the allegations contained in the charge," regardless of whether the specific incidents of discrimination had been specifically brought to the investigating agency's attention. *Smith-Thompson v. District of Columbia*, 657 F. Supp. 2d 123, 136 (D.D.C. 2009) (quoting *Park*, 71 F.3d at 907). This is known as the "continuing violation" doctrine, and before *Morgan*, courts relying on this doctrine permitted a plaintiff to bring suit and recover for all related incidents, even those that were not specifically exhausted. *See Morgan*, 536 U.S. at 115-17. The *Morgan* Court rejected the "continuing violation" doctrine insofar as it related to discrete acts of discrimination or retaliation, holding that a Title VII plaintiff must file an administrative charge for *each* incident, even when the other claims are like or related to acts alleged in a timely-filed administrative

complaint. *Smith-Thompson*, 657 U.S. at 136 (citing *Morgan*, 536 U.S. at 114-15).[7]

Thus, as a general rule, a "Title VII plaintiff must timely exhaust administrative

remedies *for each discrete act alleged*[,]" even if the acts are related. *Laughlin v.*

*Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013) (emphasis added) (citing *Morgan*, 536

U.S. at 110, 115).

 *Morgan* dealt specifically with a factual scenario involving allegations of

discrete discriminatory acts that had occurred *before* the plaintiff filed an administrative

complaint, and the Supreme Court did not address exhaustion in the context of

discriminatory or retaliatory incidents that occurred *after* an administrative complaint is

filed. *See* 536 U.S. at 115-16. Prior to *Morgan*, "courts generally held that a plaintiff

was not required to separately exhaust her administrative remedies for retaliation claims

arising after the filing of an administrative complaint." *Smith-Thompson*, 657 F. Supp.

2d at 136 (collecting cases). But now, in the wake of *Morgan*, there is considerable

uncertainty regarding how such claims should be treated; even district judges within

this jurisdiction are at odds regarding "the extent to which *Morgan* [also] requires

exhaustion of claims based on discrete discriminatory [or retaliatory] acts that occurred

*after* the filing of an EEO charge." *Rashad v. Wash. Metro. Area Transit Auth.*, 945 F.

Supp. 2d 152, 166 (D.D.C. 2013); *see also Carson v. Sim*, 778 F. Supp. 2d 85, 98

---

[7] A different standard applies for hostile work environment claims, which necessarily involves a pattern of conduct over a period of time. The acts that give rise to a hostile work environment—a claim that Mount has not made in the instant case—need not be exhausted separately because they are not considered to be discrete events. *See Nichols v. Truscott*, 424 F. Supp. 2d 124, 133 n.9 (D.D.C. 2006) ("[A] plaintiff who has properly exhausted [a single hostile work environment] claim may in federal court support it with related conduct that was not part of her administrative claim[.]" (citation omitted)); *see also Nguyen v. Mabus*, 895 F. Supp. 2d 158, 172 (D.D.C. 2012) (same). To this extent, even after *Morgan*, the "continuing violation doctrine" is alive and well with respect to hostile work environment claims.

(D.D.C. 2011) (noting the "unresolved discord" within this circuit); *Hernandez v. Gutierrez*, 656 F. Supp. 2d 101, 104-05 (D.D.C. 2009) (same).

In general, in the years since *Morgan*, judges in this district have traveled down one of two paths when evaluating whether separate exhaustion is required for claims of discrimination or retaliation that are based on events alleged to have occurred after the filing of an administrative complaint. Many of the judges who have considered this question have held that a plaintiff alleging discrete acts of discrimination or retaliation—including those filed after an administrative complaint—must exhaust his administrative remedies with respect to the later-occurring incidents even if they are related to the claims in the administrative complaint. *Rashad*, 945 F. Supp. 2d at 166 (*Morgan* "changed [the] generous assumption" that no separate exhaustion was required); *Romero-Ostolazo v. Ridge*, 370 F. Supp. 2d 139, 149 (D.D.C. 2005) ("Although *Morgan* bars recovery for, on its facts, discrete acts occurring before the statutory time period, *Morgan* has, on the whole, been understood to also bar discrete acts occurring . . . after the filing of an administrative complaint, when a plaintiff does not file a new complaint or amend the old complaint but instead presents these acts for the first time in federal court." (citations omitted)). This appears to be the majority view. *See, e.g.*, *Rashad*, 945 F. Supp. 2d at 166-67 (Collyer, J.) ("This Court is of the opinion that discrete acts of discrimination and retaliation require discrete charges and an opportunity for investigation before litigation." (citing *Morgan*, 536 U.S. at 114)); *Hunter v. District of Columbia*, 797 F. Supp. 2d 86, 95 (D.D.C. 2011) (Berman Jackson, J.) (noting that "[c]ourts in this district have applied *Morgan* in holding that a plaintiff must exhaust his administrative remedies with respect to distinct acts that occurred after

the filing of an administrative charge" (citation omitted)); *accord Reshard v. Lahood*, No. 87-2794, 2010 WL 1379806, at *13 (D.D.C. Apr. 7, 2010) (Walton, J.), *aff'd*, 443 F. App'x 568 (D.C. Cir. 2011), *cert. denied* 132 S. Ct. 2442 (2012); *Camp v. District of Columbia*, No. 04-234, 2006 WL 667956, at *7-8 (D.D.C. Mar. 14, 2006) (Kollar-Kotelly J.); *Romero-Ostolazo*, 370 F. Supp. 2d at 149 (Lamberth, J.); *Keeley v. Small*, 391 F. Supp. 2d 30, 40-41 (D.D.C. 2005) (Bates, J.); *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132 (D.D.C. 2004) (Friedman, J.), *amended in part on other grounds by* 400 F. Supp. 2d 257 (D.D.C. 2005); *Bowie v. Ashcroft*, 283 F. Supp. 2d 25, 34 (D.D.C. 2003) (Facciola, M.J.). These cases tend to highlight *Morgan*'s "emphasis on strict adherence to procedure and on the severability of discrete acts" of discrimination, and also the Supreme Court's "rejection of the various continuing violation doctrines of the Circuit Courts[.]" *Romero-Ostolazo*, 370 F. Supp. 2d at 149. This approach also underscores the recognized purposes of the exhaustion requirement, which are to "ensure[] that only claims [that a] plaintiff has diligently pursued will survive" and to "encourage[] internal, less costly resolution of Title VII claims." *Id.* (internal quotation marks and citations omitted).

But there are other judges in this district who, under certain circumstances, have not read *Morgan* to disallow unexhausted retaliation claims based on events that occur after the filing of an administrative charge. *See, e.g.*, *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 183 (D.D.C. 2012) (Sullivan, J.); *Pierson v. Wash. Metro. Transit Auth.*, 821 F. Supp. 2d 360, 365-66 (D.D.C. 2011) (Urbina, J.); *Thomas v. Vilsack*, 718 F. Supp. 2d 106, 121 (D.D.C. 2010) (Kay, M.J.); *Hazel v. Wash. Metro. Area Transit Auth.*, No. 02-1375, 2006 WL 362693, at *8 (D.D.C. Dec. 4, 2006) (Roberts, J). This line of cases

> distinguishe[s] retaliation claims that arise after a plaintiff
> has filed an administrative complaint [from those that arose
> before the administrative complaint is filed], holding that
> separate exhaustion is not required for those later acts of
> retaliation that would have come within the scope of any
> investigation that reasonably could have been expected to
> result from the initial administrative charge[.]

*Nguyen*, 895 F. Supp. 2d at 183 (internal quotation marks omitted) (citing *Hazel*, 2006

WL 3623693, at *8).  Cases that follow this reasoning—which appears to be the

minority view in this jurisdiction—typically hold that no separate exhaustion is

required if subsequent alleged retaliatory acts are "of a like kind to the retaliatory acts

alleged in the EEOC charge" such that they necessarily would have come within the

"scope of any investigation that reasonably could have been expected to result from

[the] initial charge of discrimination."  *See Hazel*, 2006 WL 3623693, at *5, 8 (citations

omitted).  The rationale behind this viewpoint is that the administrative complaint puts

the agency on notice of the possibility of further retaliation; therefore, the agency

should be aware of any later-occurring incidents, and its investigation would be likely

to encompass such incidents.  *See id.* (noting that a reasonable investigation "would

certainly have focused" on whether the retaliation alleged in the complaint "continue[d]

to exist at the time of the investigation" (citation omitted)).  Thus, the "of a like kind"

analysis centers on whether the allegations that were specifically put before the agency

and the new allegations the plaintiff seeks to litigate constitute the same cause of action

and are factually similar such that they would be discovered during the agency's

investigation.

Much like this doctrinal divide within the U.S. District Court for the District of

Columbia, the Courts of Appeals are also split over whether a plaintiff must raise

subsequent, related retaliation claims in separate administrative complaints before bringing them into federal court. *Compare Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (complainant must file a new administrative complaint for all acts of retaliation that arise subsequent to the filing of the initial administrative complaint) *with Wedow v. City of Kansas City*, 442 F.3d 661, 673-74 (8th Cir. 2006) (no need to exhaust separately acts of retaliation subsequent to the initial administrative complaint if they would be discovered during a reasonable investigation into the initial allegation) *and Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 594 (4th Cir. 2012) (no need for separate exhaustion when "both the EEOC charge and the complaint included claims of retaliation by the same actor"); *see also Simmons-Myers v. Caesers Entm't Corp.*, 515 F. App'x 269, 273 n.1 (5th Cir. 2013) ("We note that [the Fifth Circuit case waiving separate exhaustion for subsequent claims of retaliation] may no longer be applicable after the Supreme Court's decision in *Morgan*[.]"). The D.C. Circuit has repeatedly declined to weigh in on this matter, *see, e.g.*, *Payne*, 619 F.3d at 65 (declining to decide whether *Morgan* "did in fact overtake th[e] line of cases" that held that plaintiffs may still bring unexhausted claims that are "like or reasonably related to" claims they did file with their agencies); *Weber v. Battista*, 494 F.3d 179, 183-84 (D.C. Cir. 2007) (recognizing the circuit split but concluding that "we need not adopt either of the forgoing views" to resolve the matter before it), which means that, to resolve the instant dispute, this Court seemingly must make its own determination regarding whether or not *Morgan* requires separate exhaustion of acts of alleged retaliation that occur subsequent to the filing of an administrative action. Alternatively, as explained below, this Court may reasonably conclude that this Rubicon need not be crossed in the context

of the instant case because Mount's complaint misses the mark by any legal standard.

*See, e.g.*, *Coleman v. Johnson*, No. 12-1352, 2014 WL 116150, at \*7 (D.D.C. Jan. 14, 2014) (declining to decide whether the "like or reasonably related" standard is still alive after *Morgan* because the plaintiff's claims did not satisfy that standard).

### B. Mount Was Required To Exhaust Each Of The Non-Selection Retaliation Events He Alleges In His Complaint Under The Circumstances Presented Here

As noted, the question for this Court is whether the series of allegedly discriminatory or retaliatory non-selections that Mount lists in his complaint—which occurred after he filed his first administrative action—needed to be exhausted separately or whether it was sufficient for exhaustion purposes that Mount had previously filed an EEO complaint that alleged, among other things, discrimination and retaliation with respect to one non-selection event. Defendant would have this Court conclude that, after *Morgan*, plaintiffs are required to exhaust separately all discrete acts of discrimination or retaliation, including those that occur after a timely filed administrative complaint. (Def.'s Mot. at 11.) Because it is undisputed here that Mount did not file an EEO charge for any of the non-selections besides the Los Angeles ASAC position, Defendant argues that the rest of the retaliatory non-selection claims in the instant complaint must be dismissed as a matter of law. (*Id.* at 11, 18.) In response, Mount asserts that his failure to exhaust does not warrant judgment for Defendant as to any of the remaining non-selection allegations because the myriad non-selection incidents arose after he filed an EEO complaint and are necessarily related to that complaint such that they need not be exhausted separately. (Pl.'s Opp'n at 10.) In other words, Mount asks the Court to find that *Morgan* does not apply to alleged acts of

retaliatory non-selection that occur after an administrative complaint alleging similar retaliation is filed.  (*See id.*)

Although the Court could resolve this matter by choosing sides in the debate over the impact of *Morgan*, this Court declines to accept either party's invitation to decide the underlying legal issue because the Court concludes that resolution of that dispute makes no difference in this case.  Put bluntly, under the circumstances presented here, Mount is in a 'heads, you win; tails, I lose' situation.  There is no dispute that Mount failed to exhaust each non-selection event separately; thus, the unexhausted non-selection allegations must be dismissed from the complaint if *Morgan* is interpreted to impose that legal requirement.  On the other hand, if the legal rule is that separate exhaustion is required only for those non-selection retaliation events that were not "like or reasonably related" to Mount's administrative action, those events must be dismissed on exhaustion grounds as well because this Court discerns no such "likeness" when it considers Mount's specific EEO charge and the pertinent facts regarding the non-selections at issue here.

With respect to the first side of Mount's losing coin, Mount concedes that the administrative complaints he filed pertained only to the following issues:  the allegation of gender discrimination based on his supervisor's decision to deny him an office; the allegation of retaliation based on his supervisor's denial of training opportunities; the allegation of race discrimination based on the Las Vegas ASAC non-selection; and the allegation of retaliation based on the Los Angeles ASAC non-selection.  (*See* Pl.'s Facts ¶¶ 15-16.)  Of the exhausted issues, the instant complaint includes only the last event charged in the EEO complaint—retaliation based on the Los Angeles ASAC non-

selection—and it also adds 42 subsequent non-selection events.  Thus, the only non-selection allegation that was exhausted separately was the alleged retaliatory non-selection for the Los Angeles ASAC position, meaning that, even viewing the facts in the light most favorable to Mount, he has failed to exhaust administrative remedies with respect to the other discrete acts of retaliation and discrimination, if such separate exhaustion is required.  *See Wedow*, 442 F.3d at 673-75; *Reshard*, 2010 WL 1379806, at *13; *Camp*, 2006 WL 667956, at *7-8; *Romero-Ostolazo*, 370 F. Supp. 2d at 149; *Coleman-Adebayo*, 326 F. Supp. 2d at 132; *Bowie*, 283 F. Supp. 2d at 34.

On the flip side of Mount's losing situation is the fact that Title VII's exhaustion requirements would not be satisfied here even if this Court applied the minority legal rule that permits subsequent claims of retaliation to be considered exhausted based on the filing of a prior EEO complaint.  The key to this Court's conclusion in this regard is its rejection of Mount's contention that any and all subsequent retaliation claims are necessarily and automatically "like or related" to a retaliation claim made in an EEO complaint.  (Pl.'s Opp'n at 18 ("[R]etaliation claims that are in response to an EEO charge relate to that EEO charge and are therefore properly exhausted because they are 'like or related' to the original charge[.]  All of Mount's [ ] retaliation claims relate to his EEO charge because they were in response to that charge and are therefore not barred.").)  No court in this district has adopted an approach that is as sweeping as the one Mount proposes.  Instead, courts have required that the later-occurring incidents be "of a like kind" to those in the administrative complaint, insofar as they involve the same cause of action and similar facts such that the subsequent events would likely have been discovered during the agency's EEO investigation of the initial charge; and

in some cases, courts also require that the plaintiff specifically allege that the subsequent incidents were part of the same "ongoing" conduct. *See, e.g.*, *Hazel*, 2006 WL 3623693, at *8.

When this alternate legal standard is properly understood, it is clear that Mount's myriad non-selection retaliation claims cannot be deemed exhausted even under this approach. As noted above, Mount's first EEO complaint pertained to gender discrimination based on Peyus's refusal to give Mount an office and alleged retaliation based on her refusal to allow Mount to participate in certain training programs. (ROI at 5-7 (initial EEO complaint regarding office denial); *id.* at 7-8 (amendment regarding denial of training).) Even viewing the evidence in the light most favorable to Mount, as summary judgment requires, the incidents reported in the EEO complaint and the unexhausted non-selection allegations are not "of a like kind" as a matter of law, because they involve entirely different causes of action. *See Hazel*, 2006 WL 3623693, at *6 (noting that the subsequent acts of retaliation must match the retaliation alleged in the EEOC charge); *see also Koch*, 935 F. Supp. 2d at 174 (noting that it "does not seem reasonable to expect that [an] EEO Office would have examined" how certain actions were retaliatory in their administrative investigation if the complaint only addressed their "discriminatory nature"); *Jones v. Bernanke*, 685 F. Supp. 2d 31, 37 (D.D.C. 2010) (same). Nor is there any reason to believe that the agency would have discovered the later retaliatory non-selections during the course of an investigation into retaliation allegations involving entirely different facts and individuals. *See, e.g.*, *Pierson*, 821 F. Supp. 2d at 366 (although both the exhausted claims and the subsequent claims alleged retaliation, the agency's investigation into a wrongful termination claim in the

administrative complaint would not reasonably have resulted in inquiry into denial of vacation benefits).  The agency cannot reasonably have been expected to inquire into Mount's applications for scores of jobs across the country in the course of investigating a particular supervisor's decisions regarding offices and training programs.  Thus, Mount's many retaliatory non-selections cannot be deemed exhausted by virtue of his initial gender discrimination administrative complaint and amendment.

To the extent that Mount's exhaustion argument is based on his second EEO complaint, which alleged that his non-selection for a Las Vegas ASAC position constituted race discrimination (Second ROI at 8) and was eventually consolidated with his initial EEO complaint, his argument fares no better.  The connection between the second administrative complaint and the unexhausted retaliation claims is certainly closer:  it involves a non-selection, as do the later retaliation claims; but in the administrative complaint, Mount alleged that he was denied the selection due to *race discrimination*, not retaliation.  (*See id.*)  The claims therefore allege different causes of action, which is fatal to their classification as being "of a like kind."  *See Jones*, 685 F. Supp. 2d at 37.  Moreover, and in any event, given the timeframe of the agency's investigation of Mount's race discrimination claim, Mount undoubtedly had an obligation to mention other positions to which he had applied and not been selected for during this same period, and the record establishes that, without such notice, the agency would not reasonably have been aware of the fact that alleged discriminatory or retaliatory non-selections were happening elsewhere. [8]

_____

[8] Mount amended his EEO complaint to include the allegedly discriminatory non-selection for the Las Vegas ASAC position on December 30, 2010, and the investigation into that claim took place from May 31, 2011, through August 10, 2011.  (ROI at 4; Second ROI at 3.)  In the complaint, Mount alleges that he applied to and was not selected for over ten positions in other offices during that same period.

The last possible way in which Mount's list of unexhausted non-selections could be considered "like or related" to his pending EEO complaint is as a result of the final amendment to the consolidated EEO complaint in which Mount alleged that his non-selection for an ASAC position in Los Angeles in July of 2011 constituted retaliation. The Court finds that the agency had notice of Mount's belief that his employer's decision not to select him for the Los Angeles position constituted retaliation for his earlier EEO activity as of November 14, 2011, when the agency approved Mount's requested amendment. (*See* Second ROI at 19-20.) But with respect to the more than 25 retaliatory non-selections that occurred after Mount amended the administrative complaint to include the Los Angeles non-selection (*see* Compl. ¶¶ 49-118), the particular undisputed facts of the instant matter preclude a finding that these claims were "like or related" to the EEO charge because they likely would have come within the "scope of any investigation that reasonably could have been expected to result from [the] initial charge of discrimination." *See Hazel*, 2006 WL 3623693, at *8. This is because, even if a reasonable investigation would have uncovered the additional non-selection events, Mount and his attorney unequivocally *cut off that investigation*, expressly limiting its scope to the Los Angeles non-selection. (*See, e.g.*, Second ROI at 16 ("The only issue you should be investigating is the LA job[.]").) Indeed, far from bringing other retaliatory non-selection events to the agency's attention in the course of its investigation, Mount did precisely the opposite—stating (through his lawyer) that the "only relevant issue" is "the job in CA[,]" and "[a]s such, that is the only issue that you have a right to compel cooperation from Mr. Mount and it is the only issue we've

addressed." (*Id.* at 15; *see also id.* at 19-20 (Mount's declaration pertained only to the Los Angeles position).)

Having effectively shut down any agency investigation into other non-selections, Mount cannot now be heard to contend that, if such an investigation would have proceeded, the agency would have discovered the other retaliatory non-selection events and thus the complaint's claims with respect to those incidents should be deemed exhausted. In other words, regardless of whether the litany of non-selections that appear in Mount's complaint are "like or related" to the one he brought to the agency as a matter of fact, the record here establishes that Mount has *waived* any argument that they are, for the very simple reason that he *told* the agency that no other incidents were relevant (like or related) to the course of its investigation of the Los Angeles non-selection event. When coupled with well-established principles of judicial estoppel, Mount's waiver is sufficient to dispose of his exhaustion argument, even if *Morgan* permits "like or related" subsequent acts of retaliation to be deemed exhausted as a matter of law. *Cf. Moses v. Howard Univ.*, 567 F. Supp. 2d 62, 65 (D.D.C. 2008) ("Judicial estoppel is an equitable doctrine that prevents parties from abusing the legal system by taking a position in one legal proceeding that is inconsistent with a position taken in a later proceeding." (citing *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)); *see also*, *e.g.*, *Moses*, 567 F. Supp. 2d at 65 (collecting cases in which plaintiffs were barred from pursing certain employment discrimination allegations because they failed to disclose them during bankruptcy proceedings).

In short, there is no genuine dispute over the fact that Mount's attorney limited the scope of the agency's investigation. It is also clear beyond cavil that it is not likely

that the agency would have discovered the unexhausted non-selections during the course of a reasonable investigation into the Los Angeles non-selection even, given that Mount himself refused to raise or address any other non-selection incident during the administrative process. On these facts, there is simply no basis to conclude that any of the unexhausted retaliatory non-selection events should be deemed exhausted by virtue of *Morgan* or any other applicable legal standard.[9]

## IV. CONCLUSION

It is undisputed that Mount failed to exhaust separately any of the non-selection allegations in his complaint other than the Los Angeles non-selection incident. There is also no genuine dispute over the fact that Mount's attorney limited the scope of the agency's investigation into the Los Angeles non-selection incident such that it is unreasonable and unfair to assume that the agency would have discovered the other non-selection events about which Mount now complains. Therefore, Defendant's motion to dismiss the complaint in part, or in the alternative, motion for partial summary judgment is **GRANTED**. Counts I and II of the complaint are dismissed in their entirety because there is no exhausted allegation of discrimination based on gender

---

[9] Because the Court finds that Mount's actions foreclosed the possibility that the EEO investigation of the Los Angeles ASAC non-selection would uncover the other non-selection incidents, the identity of the selecting officer for each unexhausted non-selection is of no consequence. Put another way, even in the unlikely event that the selecting officer was the same individual in all of the unexhausted instances such that the agency might have otherwise discovered those events based on their relatedness, that fact is not material here, because Mount limited the scope of that investigation. For this reason, the Court need not address the plaintiff's counsel's Rule 56 affidavit seeking additional discovery into the identity of the selecting officer. (*See* ECF No. 8-3.)

or sex in the complaint.[10]  With respect to Count III, which alleges retaliation, Mount

can only bring suit based on the Los Angeles non-selection event, and as set forth in the

accompanying order, the remaining non-selections are no longer to be considered part

of this action because Mount failed to exhaust administrative remedies as to those

incidents.


Date:  April 10, 2014                                          *Ketanji Brown Jackson*
                                                        KETANJI BROWN JACKSON
                                                        United States District Judge

---

[10]  As explained previously, Mount's administrative complaint regarding the Los Angeles ASAC non-selection event alleged only retaliation, not discrimination based on gender or sex.  (*See* Second ROI at 3 (noting that the accepted amendment to Mount's administrative complaint pertained to whether the agency "discriminated against [Mount] based on reprisal (prior EEO activity)" when it did not select him for the Los Angeles position); *id.* at 14; *see also* Pl.'s Opp'n at 3 ("Mount alleged that he was retaliated against on July 14, 2011, when he was not selected for the [ ] Los Angeles position[.]").)