# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON MOUNT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 12-cv-1276 (KBJ) |
| | ) |
| JEH CHARLES JOHNSON, | ) |
| *Secretary, Department of* | ) |
| *Homeland Security,* | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiff Jason Mount, a Caucasian man, is employed as a Supervisory Special Agent at the Department of Homeland Security ("DHS" or "Defendant").  On July 31, 2012, Mount filed the instant complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e–2000e-17, alleging that DHS discriminated against him on the basis of his gender and race when it did not select him for any one of the 43 different positions within the agency's offices nationwide for which he had applied.  (*See* Compl., ECF No. 1, ¶¶ 123–143 (Counts I and II).)  The complaint also alleges that these various non-selections constituted retaliation for Mount's previous filing of an EEO discrimination charge against his supervisor.  (*See id*. ¶¶ 144–151 (Count III).)  On April 10, 2014, this Court dismissed Counts I and II of Mount's complaint, and partially dismissed Count III, on the grounds that Mount had failed to exhaust his administrative remedies with respect to 42 of the 43 non-selection claims in the

complaint.  (*See* Mem. Op., ECF. No. 13, at 29–30.)[1]  The only claim that remained at

that point—and the one that is currently at issue—is Mount's claim that DHS retaliated

against him by not selecting him for a Los Angeles Assistant Special Agent-in-Charge

("ASAC") position on July 14, 2011.  (*See id*. at 30 & n.10.)

Before this Court at present is Defendant's motion for summary judgment on the

Los Angeles ASAC non-selection retaliation claim.  (Def.'s Mot. for Summ. J. ("Def.'s

Mot."), ECF No. 26.)  Defendant assumes *arguendo* and for the purposes of its motion

that Plaintiff has established a prima facie case of retaliatory non-selection, and argues

that summary judgment should be granted in DHS's favor nevertheless because the

agency had a "legitimate-non-retaliatory reason for its actions that Plaintiff cannot

show to be pretextual[.]"  (*Id*. at 12.)  According to Defendant, the agency selected

Hoang Truong for the position instead of Mount because DHS believed that Truong was

better qualified for the position based on objective criteria.  (*Id*.)  Defendant also

maintains that Mount's assertions of temporal proximity cannot, standing alone,

establish a retaliatory motive.  (*See id.* at 22-26.)  In response, Mount maintains that

DHS's proffered reasons for not selecting him are pretextual because he had superior

qualifications that Truong lacked (*see* Mem. in Support of Pl.'s Opp'n to Def.'s Mot.

("Pl.'s Opp'n"), ECF No. 27-1, at 8–10), and because the experience-related criteria

that DHS uses to make its hiring decisions were inappropriately applied to him (*see id.*).

Mount further argues that, solely because of the close temporal proximity between

Mount's protected activity and DHS's allegedly unreasonable non-selection, a jury

---

[1] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

could reasonably conclude that the purportedly legitimate reasons that DHS seeks to advance are a pretext for unlawful retaliation.  (*See id.* at 10–11.)

For the reasons explained fully below, this Court finds that no reasonable jury could find that DHS's legitimate, non-retaliatory reason for hiring Truong for the position was a pretext and that the true reason for the non-selection was retaliation. Thus, Defendant's motion will be **GRANTED**, and summary judgment will be entered in favor of Defendant on the retaliation claim based on Mount's non-selection for the Los Angeles ASAC position.  A separate order consistent with this Memorandum Opinion will follow.

## I.  BACKGROUND

### A.    Factual Background

The basic facts regarding Mount's service as an employee of DHS, his filing of a complaint against his supervisor, and the agency's review of his application for a position in the Los Angeles ASAC are recounted below and are not disputed, unless otherwise noted.

Mount began his employment at DHS when he was hired as a Special Agent of the U.S. Customs Service on September 3, 2001.  (*See* Compl. ¶ 13; *see also* Def.'s Stmt. of Material Facts, ECF. No. 26-1, ¶ 16; Pl.'s Stmt. of Material Facts, ECF No. 27-2, ¶ 16.)[2]  Over time, Mount was promoted to Branch Chief / Supervisory Special Agent (level GS-15) at ICE Headquarters in Washington, D.C.  (*See* Compl. ¶ 14.)  In

---

[2] The name and structure of the U.S. Customs Service changed throughout the course of Mount's employment.  When he was first hired, it was known as the U.S. Customs Service; it later became the United States Immigration and Customs Enforcement ("ICE").  (*See* Compl. ¶ 13.)  This agency is presently under the supervision of the DHS.

November of 2010, Mount filed an administrative gender-discrimination complaint with the agency's EEO office, alleging that ICE was discriminating against him based on his gender because the agency did not grant his requests for an office, while his female counterparts had received offices.  (*See* Compl. ¶¶ 15, 22; Report of Investigation ("ROI"), Ex. A to Def.'s Mot., ECF No. 26-3, at 12.)

On March 7, 2011, while this EEO complaint was pending, ICE announced a vacancy in a GS-15 ASAC position in Los Angeles, California.  (*See* Def.'s Stmt. of Material Facts ¶ 2; Pl.'s Stmt. of Material Facts ¶ 2.)  The advertised position was in the ICE Homeland Security Investigations directorate ("HSI"), the division that "investigates immigration crime, human rights violations and human smuggling, smuggling of narcotics, weapons and other types of contraband, financial crimes, cybercrime and export enforcement issues."  (ROI at 92.)  The position was "primarily that of a second or third line supervisor[,]" and the duties included, among other things, the "management and direction of all investigation operations and administrative activities located within the Field Office's geographic boundaries"; the management of the activities of the program "through subordinate supervisors who supervise staff involved in investigation and/or intelligence gathering functions"; the evaluation of subordinate supervisors as they undertake to evaluate nonsupervisory employees; and the review and approval of disciplinary actions.  (Def.'s Stmt. of Material Facts ¶¶ 3–4; Pl.'s Stmt. of Material Facts ¶¶ 3–4; ROI at 145–51.)  The announcement for the position also stated that the successful applicant must "make continuous studies of investigative operations to evaluate the effectiveness of local operations and brief same" and "must [also] be able to develop and maintain successful relationships and

information networks with internal and external officials and stakeholders in all levels of government[.]"  (Def.'s Stmt. of Material Facts ¶ 4; Pl.'s Stmt. of Material Facts ¶ 4.)

A preliminary interview panel consisting of Special Agent-in-Charge ("SAC") Claude Arnold, Deputy SAC Kevin S. Kozak, and Assistant SAC Debra Parker, reviewed the applications of three GS-15 candidates—including Mount—and several GS-14 candidates, including Truong.  (Def.'s Stmt. of Material Facts ¶ 8; Pl.'s Stmt. of Material Facts ¶ 8; ROI 145–51.)  SAC Arnold then wrote a memorandum that recommended giving the position to Truong; several reasons for that recommendation were also provided.  (*See* Def.'s Stmt. of Material Facts ¶ 10; Pl.'s Stmt. of Material Facts ¶ 10.)  Specifically, the memo emphasized Truong's "operational expertise, administrative experience and [his] understanding of the strategic planning process necessary to being an effective ASAC[,]" and it also highlighted certain aspects of his work experience, including his service as a criminal investigator for fifteen years, his position as a National Program Manager at HSI Headquarters for two years, and the fact that he worked "as an Operations Manager in Operations West for seven months." (SAC Arnold Memo, Ex. C to Def.'s Mot., ECF No. 26-5, at 2.)  The interview panel concluded that the Los Angeles ASAC position should be offered to Truong, after which a separate (intermediate) selection panel reviewed the documentation and also recommended that Truong be given the job.  (*See* Def.'s Stmt. of Material Facts ¶¶ 9, 12; Pl.'s Stmt. of Material Facts ¶¶ 9–12.)  Acting Deputy Associate Director Michael Holt then offered the position to Truong based on both panels' recommendations.  (*See* Def.'s Stmt. of Material Facts ¶ 13; Pl.'s Stmt. of Material Facts ¶ 13.)

Notably, the parties here vigorously dispute whether or not there was unanimity among the panelists with respect to the conclusion that Truong was the best candidate— DHS asserts that "*[a]ll three* [interview] panel members agreed that [Truong]. . . was the best qualified candidate" and that the intermediate selection panel "reviewed the documentation and *unanimously* concurred" (Def.'s Stmt. of Material Facts ¶ 9, 12 (emphasis added)), while Mount maintains that at least one member of the interview panel, SAC Arnold, was not, in fact, evaluating the candidates' qualifications objectively, and instead, had decided "not [to] select [Mount] because of his prior administrative complaint[,]" effectively skewing the observations in his recommendation memorandum accordingly (Pl.'s Stmt. of Material Facts ¶¶ 9, 10, 12).

On August 29, 2011, after he was informed that he would not be appointed as the Los Angeles ASAC, Mount amended his open EEO complaint to include an additional claim of retaliation based on the Los Angeles ASAC non-selection.  (ROI at 20.)   He also allegedly requested reassignment to another office, and the following spring, he was voluntarily downgraded to his present position as a Supervisory Special Agent (level GS-14) stationed in Boston, Massachusetts.  (*See* Compl. ¶ 122 (asserting that "he begrudgingly accepted the . . . position in Boston . . . on March 4, 2012"); *see also* Ex. F to Def.'s Mot., ECF No. 26-8, Mount Dep. 4:18–24, 5:1–13, Nov. 18, 2014.)

**B.    Procedural History**

Mount filed the instant lawsuit on July 31, 2012.  His complaint alleges that DHS discriminated and retaliated against him by unreasonably failing to select him for the Los Angeles ASAC position, as well as 42 other distinct employment positions that he applied for within the agency between January 19, 2011, and April 25, 2012.  (*See*

Compl. ¶¶ 19–121.)  After this Court granted the agency's partial motion to dismiss and dismissed the 42 other non-selection claims for lack of exhaustion (*see generally* Mem. Op. & Order, ECF Nos. 13–14), the parties proceeded to discovery on the retaliation claim regarding the Los Angeles ASAC position (*see* Scheduling Order, ECF No. 22), and when the discovery period closed, Defendant filed the present motion for summary judgment.

In the motion, Defendant contends that DHS had a legitimate, non-retaliatory reason to select Truong over Mount, insofar as the selection officials believed that Truong was better qualified for the position.  (*See* Def.'s Mot. at 13–16.)  Among the various facts that Defendant identifies to support this assertion is the contention that Truong "had more field experience as a federal agent"; that he had experience overseeing Title III investigations as a permanent first-line supervisor; and that he had worked "on the South West border, where many criminal operations ultimately impacted the Los Angeles Office"—experiences that Mount lacked.  (*Id*. at 14–15.) Furthermore, according to DHS, "Truong met the experience qualifications set out in the Hiring and Career Progression policy for GS-1811-15 ASAC, while [Mount] did not."  (*Id*. at 15.)  DHS further argues that Mount cannot present any evidence showing that these legitimate reasons for hiring Truong are pretextual, and that Mount's only argument regarding causation relies solely on temporal proximity—*i.e.*, that the Los Angeles ASAC non-selection was made soon after SAC Arnold discovered Mount's EEO complaint—and, as such, is insufficient to establish retaliation.  (*See id*. at 22.)

In his brief in opposition to the summary judgment motion, Mount maintains that DHS's proffered reasons for not selecting him to the Los Angeles ASAC position are a

pretext for retaliation because (1) he was not supposed to be subjected to the criteria in the Hiring and Career Progression policy and was independently qualified for the position; and (2) he had superior qualifications to those of Truong.  (*See* Pl.'s Opp'n at 8–11.)  In support of these contentions, Mount claims to have had certain professional experiences that Truong allegedly lacked.  (*See id.* at 9–10.)  Moreover, according to Mount, the true motive behind SAC Arnold's non-selection was retaliation for his EEO complaint, which Mount contends can be inferred by SAC Arnold's unreasonable belief that Mount was less qualified and knowledge "that [Mount] was qualified for the ASAC position according to the Criminal Investigator Hiring and Career Profession Directive[,]" and his "aware[ness] of [Mount's protected activity] shortly before he decided not to select" him.  (*Id*. at 10–11.)

Defendant's motion for summary judgment is now ripe for the Court's review.

## II.    LEGAL STANDARDS

### A.    Motions For Summary Judgment Under Rule 56

Summary judgment may be granted when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In determining whether a genuine issue of material fact exits, the Court must view all facts, and the reasonable inferences drawn therefrom, in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Crop.*, 475 U.S. 574, 587 (1986).

"A fact is material if a dispute over it might affect the outcome of a suit" and an issue is "genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)

(internal quotation marks and citation omitted).  Thus, "[t]he mere existence of some alleged [non-material] factual dispute between the parties will not defeat summary judgment[,]" *id.* (internal quotation marks and citation omitted), and "a complete failure of proof concerning an essential element of the nonmovant's case necessarily renders all other facts immaterial" warranting the Court's grant of summary judgment. *Celotex Corp.*, 477 U.S. at 323.

### B.    Plaintiff's Burden Of Proof In Title VII Retaliation Cases

Title VII of the Civil Rights Act of 1964 prohibits the federal government from retaliating against employees who engage in protected activity, including complaining of employment discrimination.  42 U.S.C. § 2000e-3(a); *see also Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (citing *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008)).  Where a plaintiff claims retaliation in the form of a non-selection, he must present sufficient evidence to "show: (1) that [he] engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action;[] (3) that a causal connection existed between the two . . . ; (4) that he applied for an available job; and (5) that he was qualified for that position." *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (first alteration in original) (open parentheses added) (internal quotation marks and citation omitted).  In the absence of direct evidence of these elements, non-selection retaliation claims brought under Title VII trigger the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (observing that "[r]etaliation claims based upon circumstantial evidence are governed by the three-step test of *McDonnell Douglas*").

The *McDonnell-Douglas* framework involves following a three-part protocol. First, a plaintiff must establish a prima facie case of prohibited discrimination, *see McDonnell Douglas*, 411 U.S. at 802, by showing that "(1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (citation omitted).  Once a plaintiff establishes this prima facie case, the burden of production then shifts to the employer to articulate legitimate, non-retaliatory reasons for the challenged employment decision. *See McDonnell Douglas*, 411 U.S. at 802.  In the non-selection context, the employer does not need to prove that the person who was hired in plaintiff's stead necessarily had superior objective qualifications for the position; rather, the only the burden is that of *articulating* the nondiscriminatory reasons for its hiring decision. *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 260 (1981).  If the employer proffers a legitimate, nondiscriminatory reason, "'the presumption [of retaliation] raised by the *prima facie* case is rebutted' and 'drops from the case.'" *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993)).  As a result, the burden then shifts back to the complainant to discredit the employer's explanation by showing that the employer's stated reason for the plaintiff's rejection was pretext, and that the real reason for the non-selection was retaliation for the plaintiff's engagement in protected activity. *See id.* at 1288–89; *cf. Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2009) (explaining that, after a defendant sets forth a legitimate non-discriminatory or non-retaliatory reason, "the district court must resolve one central [two-part] question:  Has the [plaintiff] produced

sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory [or non-retaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the employee"?).  In the context of summary judgment, this means that once "'the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case[] . . . [then] whether the plaintiff really [made out a prima facie case] is no longer relevant[.]'"  *Rochon v. Lynch*, No. 13-cv-00131, 2015 WL 5921734, at *7 (D.D.C. Oct. 9, 2015) (quoting *Brady*, 520 F.3d at 494) (first and third alterations in original).  In other words, when the defendant articulates a legitimate non-retaliatory reason for the challenged adverse employment action, the burden-shifting framework falls away and the court's sole focus becomes whether or not Plaintiff can provide sufficient evidence for "a reasonable jury [to] not only disbelieve the employer's reasons, but [also] conclude that the real reason the employer took a challenged action was a prohibited one."  *Walker v. Johnson*, 798 F.3d 1085, 1093 (D.C. Cir. 2015).

Notably, a plaintiff must show that a reasonable fact finder could reach *both* conclusions in order to survive a summary judgment challenge—that is, providing sufficient evidence for a jury to reject the defendant's reason is not sufficient "if it is nevertheless impossible for a rational factfinder to conclude the action was discriminatory." *Rochon*, 2015 WL 5921734 at *7 (citing *Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 9 (D.C. Cir. 2015)).  Conversely, "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was

abundant and uncontroverted independent evidence that no discrimination [or retaliation] had occurred." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (citations omitted).  The evidence to be assessed in evaluating whether or not the plaintiff has satisfied this burden includes "(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its action; and (3) any further evidence of [retaliation] that may be available to the plaintiff (such as independent evidence of [retaliatory] statements or attitudes on the part of the employer)." *Waterhouse v. District of Columbia,* 298 F.3d 989, 993 (D.C. Cir. 2002) (quotation marks and citation omitted).

## III.   ANALYSIS

In its motion for summary judgment, DHS argues that judgment should be entered in its favor because the agency had a legitimate non-retaliatory reason for not selecting Mount for the Los Angeles ASAC position (Truong was the most qualified applicant), and Mount has failed to create a genuine issue of material fact regarding the pretextual nature of the proffered reason.  (*See* Def.'s Mot. at 22–26.)  Plaintiff's primary contention in response to the agency's argument is that a jury could infer that DHS's proffered reason for the non-selection is pretextual because he was significantly better qualified than Truong, despite not meeting the criteria in the ASAC Criminal Investigator Hiring and Career Progression Directive (*see* Pl.'s Opp'n at 8–10), and that the temporal proximity between the non-selection and his protected activity is sufficient to support a reasonable inference that DHS retaliated against him when it offered the position to Truong (*see id*. at 10–11).  For the reasons explained below, this Court not only disagrees with Mount's assessment of the strength of his evidence, it concludes

that Mount has ultimately failed to carry his burden of showing that a reasonable jury could find DHS's proffered reason was pretextual and that retaliation was the real motive for the challenged non-selection.

### A. No Reasonable Jury Could Conclude That DHS's Stated Reason For Selecting Truong Over Mount Was Pretextual

DHS has articulated a legitimate, non-retaliatory reason for Mount's non-selection for the Los Angeles ASAC position: the fact that, in the reasoned judgment of the various selection officials, Truong was better qualified for the job.  Defendant has offered various pieces of evidence demonstrating that the relevant decisionmakers actually reached this determination, and this evidence also demonstrates that this decision was an eminently reasonable one.

First, the record demonstrates that, in contrast to Mount, Truong satisfied the experience-related qualifications for the ASAC position that are laid out in the ICE Criminal Investigator Hiring and Career Progression Directive.  (ICE Criminal Investigator Hiring and Career Progression Directive ("Directive"), Ex. G to Def.'s Mot., ECF No. 26-9, at 7.)  Section 5.2(3)(b) of the Directive specifically establishes the relevant criteria:

**GS-1811-15 Assistant Special Agent in Charge (ASAC) or Tier 1 Attaché):** Completion of a HQ tour of 18 months, *and*:

i)   A combined 24 months as a permanent ICE Group Supervisor, first-line RAC, or Assistant Attaché (GS-1811-14); or

ii)  Twelve months as a permanent second-line RAC (GS-1811-14) or Tier 2 Attaché (GS-1811-15); or

iii) A combined 24 months with 12 months as a permanent ICE Group Supervisor, Assistant Attaché, and/or first-line RAC (GS-1811-14 ), and 12 months as any other permanent ICE GS-1811-14 supervisor position.

(*Id*. § 5.2(3)(b))  Defendant points out that Truong satisfied these criteria insofar as he had completed a headquarter tour of at least 18 months by serving as a Senior Special Agent/Operations Manager in Operations West for 7 months and as a Program Manager in the Undercover Operations Unit for over 2 years, (*see* Ex. B to Def.'s Mot., ECF No. 26-4, Arnold Dep. 44:8–22, Nov. 18, 2014), and he also had experience as a permanent ICE Group Supervisor totaling at least 2 years and 7 months, which exceeded the combined 24 months requirement in subsection (i) (*see id*. 48:18–49:2; Def.'s Mot. at 19).  As explained below, Mount has argued that these criteria should not have been applied to him (*see* Pl.'s Opp'n at 4); however, he concedes that, if properly applied, he does not meet these criteria (*see* Ex. B to Def.'s Mot., ECF No. 26-8, Mount Dep. 28:7–24, Nov. 18, 2014).[3]

Furthermore, Defendant points to evidence that indicates that not only was Truong sufficiently qualified for the position, but he was also arguably *better* qualified than Mount.  The memorandum that SAC Arnold penned after the initial panel interview described Truong's operational expertise, grasp of the strategic planning process, and "wealth of administrative experience essential to an ASAC." (SAC Arnold Memo at 2.) And it is not disputed that Truong's professional record included 15 years of experience as a criminal investigator and 3 years of experience as a Group Supervisor, as well as experience supervising HSI investigative disciplines and the investigative service group for SAC San Diego, and work as a National Program Manager at HSI Headquarters,

---

[3] Mount did not have the requisite permanent supervisory experience to meet the Directive criteria. (*See* Mount Dep. 28:7–24.)  This is because, among other things, Mount's only first-line supervisory field experience was "in an acting capacity" when he would *temporarily* supervise agents directly at JFK Airport if "the supervisor was out for a week or on vacation" (*id*. 40:16–25, 41:3–5), which falls far short of the permanent 12 or 24 month experience requirement in every subsection.

where he "was responsible for authoring policy, leading undercover field review teams, and revising curricula for all the HSI undercover schools." (*Id.*) The memorandum also provides detailed reasons for recommending Truong over all of the other candidates for the position—a contemporaneous account of the decisionmakers' rationale that explains Truong "distinguished himself" based on having had administrative experiences that were "more operationally based" that the other candidates and were in parts of the country where many criminal operations impact the Los Angeles Office (*i.e.,* the South West border). (Arnold Dep. 76:3–77:20, 80:13–18.)

Additionally, ASAC Parker, another member of the interview panel, provided a declaration in which she explained that Truong "was a superior candidate to . . . Mount because Truong had prior field-level supervisory experience, and as administrative overseer for a certified undercover operation, was familiar with a broader range of programmatic areas within HSI's purview." (Decl. of Debra Parker, ECF No. 26-14, ¶ 3.) The record also plainly supports DHS's contention that the three members of the separate selection panel were unanimous in their conclusion that Truong was better qualified: one panelist based his selection largely upon Truong's experience as a first-line field supervisor and the fact that he met the Directive criteria (*see* Decl. of Robert Rutt, ECF No. 26-15, ¶ 2), while another concluded, apparently independent of the other panel members, that Truong's varied experience as a Group Supervisor in several HSI programmatic areas and in HSI headquarters made him the more qualified candidate (Decl. of Janice Ayala, ECF No. 26-12, ¶ 2), and the third emphasized that not only had Truong "met the career path criteria for selection" but also that "the

selection was fully justified by SAC Arnold based on the needs for his office[]" (Decl. of John P. Woods, ECF No. 26-16, ¶ 2.)

Given this (well-supported) set of legitimate reasons for the non-selection, Mount must, at the very least, point to record evidence that is sufficient for a reasonable jury to disbelieve the veracity of that reason. *See Johnson*, 798 F.3d at 1093. To this end, he tries valiantly to cast doubt upon DHS's proffered reasons and infer retaliation, but this Court finds that his efforts fall far short of giving rise to a reasonable inference of retaliation under the circumstances presented here.

For example, Mount argues that the Defendant's proffered rationale was not the *real* reason for his non-selection because the agency erroneously judged his qualifications under the Directive's new criteria, from which he was purportedly exempted under the Directive's "Grandfather Clause". (*See* Pl.'s Opp'n at 8–9.) It is patently clear from the record, however, that Mount was *not* excused from the otherwise applicable Directive criteria via the grandfather clause, because that clause only exempts applicants who are applying for the *same* position level as the one they already hold, not those who, like Mount, were seeking to *change* their position on or after the effective date of the new qualifications. (*See* Directive § 2.10 (explaining that, although the requirements will not be applied to "employees who permanently occupy the Criminal Investigator positions outlined in Subsection 5.2 . . . as of the effective date of this Directive[,] . . . Criminal Investigators who experience a *change in position (e.g., via reassignment, promotion, etc.)* on or after the effective date of this Directive will become subject to the policies and procedures contained in this Directive" (emphasis added).) Moreover, given Mount's concession that his experience failed to

meet the Directive's qualifications criteria (*see supra* note 3), his contention that

reasonable jury could glean pretext from the fact that SAC Arnold "knew" that he "was

qualified for the ASAC position according to the Criminal Investigator Hiring and

Career Pro[gr]ession Directive" but failed to choose him (Pl.'s Opp'n at 10) is

unsupported and unpersuasive.

Mount also attempts to cast doubt upon DHS's non-retaliatory reason for hiring

Truong by arguing that *he* was actually the superior candidate (*see id.* at 9–10 (asserting

that he had "superior qualifications" over Truong), but this contention, too, is bald and

unconvincing.  While it is true that a jury could infer retaliation from evidence showing

that "a reasonable employer would have found the plaintiff *significantly* better qualified

for the job[,]" it is well established that the disparity between qualifications must be

"great enough to be inherently indicative of discrimination[.]" *Holcomb*, 433 F.3d at

897.  Mount has fallen well below that bar here.  Simply stated, the record evidence

does not indicate the kind of stark superiority of credentials that necessitates denial of

summary judgment.  *See, e.g., Horvath v. Thompson*, 329 F. Supp. 2d 1, 7 (D.D.C.

2004); *see also Keeley v. Small*, 391 F. Supp. 2d 30, 50 (D.D.C. 2005) ("In order for

disparities in qualifications to be evidence of pretext that would lead this Court to

second-guess defendant's hiring decision, they must be so apparent as to virtually jump

off the page and slap us in the face." (internal quotation marks and citation omitted)).

Mount's sole evidence is his own statement that he possessed certain experiences that

Truong lacked, such as experience supervising GS-14s and GS-15s at ICE headquarters,

drafting policies, managing budgets and personnel, and hearing disciplinary cases

within the agency.  (*See* Pl.'s Opp'n at 9–10.)  But even if this is all true, Mount fails to

offer any evidence that would permit the inference that having these few additional experiences rendered Mount a far superior candidate, and this is an especially damning omission given that Mount concededly lacked some of the other required qualifications that Truong indisputably possessed.  (*See supra* note 3.)

Furthermore, the D.C. Circuit has long maintained that, "[i]n a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call."  *Aka,* 156 F.3d at 1294.  Thus, where the evidence shows only "slight questions of comparative qualifications," it cannot be said to be sufficient to establish a genuine issue of fact regarding the starkly superior credentials that are necessary to survive a summary judgment challenge. *Walker v. Dalton*, 94 F. Supp. 2d 8, 16 (D.D.C. 2000).

### B.     The Record Does Not Support An Inference That Mount Was Denied The Position In Retaliation For His Protected Activity

It is also clear to this Court that Mount has failed to show that a reasonable jury could conclude, based on the evidence presented, that Mount was passed over for the Los Angeles ASAC position in retaliation for his prior protected activity.  To survive summary judgment, Mount would have to point to sufficient evidence in the record to create a genuine issue regarding the real motive behind his non-selection.  *See Johnson*, 798 F.3d at 1093 (the evidence "must be such that a reasonable jury could . . . conclude that the real reason the employer took a challenged action was a prohibited one[]").  And although "[d]irect evidence of reprisal—such as a statement by a managerial employee that she or he took action because an employee had filed a charge of discrimination—is the exception rather than the rule[,]"  *Allen v. Johnson*, 795 F.3d 34,

39 (D.C. Cir. 2015), the circumstantial case that a retaliation plaintiff might opt to rely on must be strong enough to give rise to an inference of retaliatory motive.  Typical means of providing sufficient circumstantial evidence from which a retaliatory motive could be inferred "include pointing to evidence that the employer treated other, similarly situated employees better; that the employer is lying about the underlying facts of its decision; that there were changes and inconsistencies in the employer's given reasons for the decision; that the employer failed to follow established procedures or criteria; or that the employer's general treatment of minority employees (or, in the retaliation context, employees who asserted their Title VII rights) was worse than its treatment of non-minorities (or employees who did not assert their Title VII rights)[,]" or that the employer committed "an error too obvious to be unintentional." *Id.* (internal quotation marks and citation omitted).  It is also the case that plaintiffs commonly attempt to show retaliatory motive by emphasizing the close temporal proximity between the adverse action and the protected activity.  *See id.* at 40.

Here, Mount's *only* assertion regarding the evidence from which a jury purportedly could infer causation is the "short time frame between the protected activity and the non-selection[.]"  (Pl.'s Opp'n at 11.)  But it is by now well established that mere proximity in time—standing alone—is not sufficient to rebut an employer's legitimate proffered reason and/or to give rise to a reasonable inference that the actual motive for the challenged employment decision is an improper one.  *See Woodruff,* 482 F.3d at 530 ("[P]ositive evidence *beyond mere proximity* is required to defeat the presumption that the proffered explanations are genuine." (emphasis added)); *see also Ward v. District of Columbia*, 950 F. Supp. 2d 9, 21 n.16 (D.D.C. 2013) (citing

*Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011)) ("The Court notes that temporal proximity alone would be insufficient to demonstrate a retaliatory motive at the summary judgment stage.").  Thus, when faced with DHS's clear contention that it selected Truong because it believed that he was the best candidate all things considered, Mount needed to do more than establish temporal proximity to support his contention that the non-selection was caused by retaliation; and having not fulfilled this obligation, Mount cannot proceed to the jury with respect to his retaliation claim.

## IV.    CONCLUSION

DHS is entitled to judgment as a matter of law because the agency has articulated a legitimate (and well-supported) non-retaliatory reason for the challenged non-selection, and because Mount has failed to present any evidence, direct or circumstantial, that could possibly lead a reasonable jury to conclude that DHS's proffered reason should be disbelieved, and that the true motive behind Mount's non-selection was retaliation for engaging in a protected activity.  *See Reeves*, 530 U.S. at 148.  Therefore, as set forth in the accompanying order, Defendant's motion for summary judgment will be **GRANTED**, and judgment will be entered in favor of Defendant on Mount's claim that his non-selection for the Los Angeles ASAC position was retaliation for his prior protected activity (*i.e.*, the only claim that presently exists in the complaint).

DATE:  March 31, 2016

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge